Barker, J.
—It is to be presumed that the special term dismissed the complaint for the reason that the legal proposition announced by the court of appeals in their opinion, when the case was before that tribunal, when applied to the facts of the case as stated in the complaint, determined *598 that the plaintiff was not entitled to any relief. 101 N. Y., 490.
The only relief sought in this action is a decree declaring the substituted bonds referred to in the complaint to be illegal and void. In considering the question presented, the allegations in the complaint should receive a liberal construction, with a view of sustaining the plaintiff’s contention that the facts averred do state a cause of action and that the plaintiff is entitled to a judgment for the relief demanded. We must not, however, forget that this is a statutory action, and unless the facts stated make a case authorizing the cancellation of the bonds for the reason that they are invalid, then the complaint was properly dismissed.
On the first trial of this action this court held that the first issue of the bonds was unauthorized, and the same were illegal and void for the reason that the court in which the proceedings were had, authorizing their issue, failed to acquire jurisdiction of the subject matter because the petition presented to the court did not show that the petitioners were a majority of the taxpayers of the town, excluding those taxed for dog and highway taxes only. See Laws of 1869, chapter 907, and also the act of 1871, chapter 925, amendatory thereof.
The court of appeals concede for the purpose of disposing of the appeal then pending, as the plaintiff then and now contends that the first bonds were void for that reason. In disposing of the case now before us, we shall adhere to our former opinion. The complaint charges specifically that those findings were illegal on that ground, and no other cause of invalidity is stated. For our own convenience we copy in this connection the averment in full, “The plaintiff also alleges, upon information and belief, that on or about the 9th day of June, 1873, a petition was signed by a portion of the tax payers of said town, describing themselves as a majority of the tax payers, whose names appeared on the said last preceding tax roll of said town, and who represented a majority of the taxable property or the said town upon said last assessment roll or tax list of said town, and praying that said town might create .and issue its bonds to the amount of $20,000, and invest the same, or the proceeds thereof, in the capital stock of” the Attica and Arcade Railroad Company, pursuant to chapter 907 of the Laws of the State of New York, passed May 18, 1869, and the act or acts amendatory thereto; that such a petition was dated June 7, 1873, and the signatures thereto procured after that day; that such petition, so signed, was presented to a judge of the supreme court of the state of New York, and that such proceedings were thereinafter *599 had, that such judge, on or about the 20th day of September, 1873, made an order in and by which he appointed Reuben Lemon, Levi R. Vincent and James GL Doty, commissioners for said town * * * The plaintiff further says that he is informed, advised and believes that the said proceedings had before said judge of the supreme court, and the bonds issued thereunder, were, and are wholly void and of no effect, for the reason that the petition presented to such judge did not conform to the statute in such case made and provided, in that it was not therein stated to be the petition of, or that the subscribers were a majority of the tax payers of the town, excluding persons taxed for dogs and highway taxes only, and for other good and valid, reasons.”
We are unable to concur in the argument of the learned cousel of the appellant, that by reason of the general imputation of fraud, as stated in the concluding part of the paragraph just quoted, other facts than those specifically alleged might be proved for the purpose of showing that the first issue of bonds were invalid. Treating those bonds as illegal and void, for the reasons stated, we have only to inquire were the railroad commissioners of the town of Attica authorized by the Legislature to exchange such unauthorized bonds for those in question, in veiw of the claim made by the holders of the same that they are legal and enforceable against the town of Attica? As we comprehend the language of the court of appeals, that very question was discussed and passed upon as a legal proposition necessary involved in the decision of the case, and it was distinctly held and affirmed that the town, acting through its proper authorities, might exchange the same for those now involved in this litigation. The exchange took place in the year 1880, after the act of that year (chap. 146), and authorized the town of Attica to issue the bonds, the provision being as follows:
“It shall be lawful for the towns of Attica and Java, respectively, in the county of Wyoming, or for either of said towns, to issue new bonds, pursuant to the provisions of chapter 75, of the Laws of 1878, entitled an act in relation to the bonded indebtedness of villages, cities, towns and counties, and the law in amendment thereof and supplementary thereto, to the amount and extent of the present respective bonded indebtedness, as provided in said act, including interest accrued and unpaid.”
The act of 1878 provided, section one, that “the present bonded indebtedness of any village, city, town or county, may be paid up or retired by the issuance of bonds of the same amount by the respective officers or boards who were .authorized to issue such outstanding bonds, provided, how *600 ever, that such new bonds shall only be issued when the existing bonds can be retired or paid by the substitution of new bonds, or by money realized thereon, in the place and instead of existing bonds, bearing a lower rate of interest than the bonds so authorized to be retired or paid. * * * This act shall not be so construed as to authorize the issue of new bonds to supersede or pay existing bonds which have been adjudged invalid by the final judgment of a competent court, and thé officers and bonds referred to in this act shall include the successors in office of those who originally issued the outstanding bonds.”
When the case was before us on the first appeal, the judgment appealed from held that the last bonds were unauthorized and invalid, and were ordered to be canceled. We placed our judgment of affirmation on the sole ground that, the first bonds were void and illegal, and that the enabling act authorizing the change did not authorize an issue of new bonds only where the retired bonds were valid and enforceable as legal obligations against the town.
The defendant contended against that construction, which this court gave the act, and the court of last resort, in its opinion, held, that the legislature intended to authorize the exchange in all cases where the facts correspond with those set forth in the complaint, and that the provisions of the enabling act covered and embraced “municipal bonds, as to which no objection had ever been raised, and probably secure against assault, bonds which had been questioned, and occasionally even resisted, and which might or might not prove' valid, according as one court or another should conclude, and excluding bonds which by some competent court had been adjudged invalid.” This proposition was followed by remarks made by the learned judge who prepared the opinion of the court, as follows: • “ This construction fully protects every right of the municipal corporations affected by the act. It takes from them no privilege of resistance to unauthorized proceedings; it leaves them to determine whether they will stand upon the law and take its award at the end, or whether, doubtful of the legal result, and unwilling to face its peril, or impressed with the justice and wisdom of preserving untainted the municipal credit, they will avail themselves of the statutory provision, and by a convenient compromise, lessen the interest burden, and perhaps extend the period of credit. They cannot do both. The statute never contemplated both a compromise and a fight. No town can accept the provision without a consequent admission in the acceptance, that the old bonds were valid, for the new are permitted to be issued only to pay the old; and the fact of their issue by the town, admits their liability when it provides for it. It was to this *601 class of cases especially that the statute could have its intended and effective operation.”
There is no room for a doubt as to the opinion of that court as to the powers conferred upon the towns, nor as to the class of cases in which the same may be exercised under the several enabling acts.
It has been argued by the appellant’s counsel, that the court of appeals intended only to pass upon a question of evidence, and reversed the judgment because competent evidence was rejected. In this, we think he is altogether mistaken.
The complaint avers that the bonds in suit were issued by the railroad commissioners, and as was claimed by them, in pursuance of the provisions of the enabling act of 1880, chapter 146. Under that act the town of Attica was authorized to issue new bonds in amount sufficient to cover the principal and interest unpaid on the bonds retired. The action was prosecuted upon the assumption that the holders of the first bonds claimed, when the exchange took place, that they were valid and enforceable, a position which the present holder has sought to maintain in its argument before us. The appellants now,. for the first time, present the argument that the bonds in question are invalid for the reason that they were issued by two of the commissioners only. No charge is made in the complaint that the third commissioner did not attend the meeting of the board and concurred in making the exchange.
In the original act, chapter 907 of the Laws of 1869, which authorized the appointment of railroad commissioners, a majority, at a meeting of which all had notice, should constitute a quorum and might exercise the power of the commission.
This statute effects a change of the common law role on the subject which required that in the exercise of a public as well as private authority, whether it be ministerial or judicial, all the persons to whom it is committed must confer and act together, and where the duty to be performed is of a public character, and the number is such as to admit of a majority, their action will bind the majority after all have duly met and conferred. In cases where that rule prevails, when nothing appears to the contrary, it is to be presumed that the person or persons who did not concur in the proceedings met and consulted with those who did. Doughty v. Hope, 3 Denio, 240; Downing v. Rugar, 21 Wend., 178; Miller v. Garlock, 8 Barb., 153; Tucker v. Rankin, 15 id., 471.
The statute does not prescribe how it shall be made to appear that the non-attending or non-concurring commis *602 sioners had notice of the meeting and the object and purpose of the same. We think the legal presumption is, until the contrary is made to appear, that the non-concuring members of the board had due notice and that the majority were authorized to act. The case of The People v. Williams (36 N. Y., 441) decided nothing to the contrary. That case arose under the statute defining the powers and duties of highway commissioners, and was as follows: “Any two commissioners of highways of any town may make an order in execution of the powers conferred in this title, provided it shall appear in the order filed by them that all the commissioners of highways of the town met and deliberated on the subject embraced in such order or were notified to attend the meeting of the commissioners for the purpose of deliberating thereon.” 1 R. S., 525, § 125. There the statute prescribes the form of the order, and made it necessary that it should appear upon the face of the same, that the third commissioner was notified, to authorize a majority of commissioners to act.
It is to be presumed that all public officers discharged their duties in accordance with the requirements of the law until the contrary appear. I am therefore -of the opinion that it is to be presumed, as nothing to the contrary was averred in the complaint, that the third commissioner had notice of the meeting when a majority of the commissioners made the exchange of bonds.
The judgment should be affirmed, with costs.
All concur.